## STATE v. ALBERT A. ROBBINS.[1]

January 22, 1932.

No. 28,676.

[1]Reported in 240 N. W. 456.

*A. X. Schall, Jr.* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Edward J. Goff,* County Attorney, and *Elizabeth K. Owens,* Assistant County Attorney, for the state.

OLSEN, J.

Defendant was convicted of the crime of selling unregistered and unlicensed securities in violation of L. 1925, p. 197, c. 192, as amended, 1 Mason, 1927, §§ 3996-1 to 4000. He appeals from the judgment and from an order denying his motion for a new trial.

The claimed securities sold were in the form of contracts made by the Ten Thousand Lakes Fur Farms Corporation. The defendant was the president of this corporation and signed the contracts. He is charged with selling a set of two of these contracts to one Arthur J. F. Schmidt on February 8, 1927. It is not claimed that the contracts were registered and licensed as securities under the law cited.

The indictment is not seriously questioned on argument here. But it is urged that the evidence as a matter of law fails to prove the guilt of the defendant of the crime charged; in other words, that the evidence does not sustain the verdict of guilty.

The indictment sets out in full the two contracts in question, alleges the sale thereof to Schmidt by defendant and one O'Malley; that the contracts were not registered as required by law; that they were sold in the course of repeated and successive sales of like contracts and were sales of an interest in and under a profit-sharing and participating agreement and scheme, defined as securities under the law. It is urged that the two contracts do not constitute a sale of an interest in or under a profit-sharing and participating agreement or scheme so as to come within the definition of a security as given in the law in question.

The first contract purports to be for a sale of "Two 'Breeding Trios,' each Trio consisting of one male and two female dark northern muskrats." The price to be paid was $75 cash on execution of the contract and $75 additional in monthly payments of $10 each month thereafter until fully paid. The contract provides for the delivery of the animals sold to the purchaser at such time and place as may be designated by him, within 12 months from date of the contract. It then further provides that the purchaser may at his option require the seller to deliver the animals to the Pine River Colony of the corporation, to be there kept and cared for in accordance with the terms of the corporation's breeding contract for said Pine River Colony. The contract is silent as to where the animals are located and contains no description by which the ones sold could be identified. Title to any specific animal could not well pass until delivered, or at least segregated. It is reasonably apparent that the purchasers of these "breeding trios" were not expected to go into the business themselves of raising muskrats, and that the important part of the sale was the "Breeding Contract," to be given by the corporation upon completion of the payments on the first contract. This breeding contract, one of which the purchaser, Schmidt, received after he had completed his payments, provides that the corporation shall place the two breeding trios purchased on its breeding grounds known as Pine River Colony; that it will feed, breed, care for, pelt, and generally supervise and manage the animals, to the best interest of the purchaser; that the corporation is to receive one-half of the purchaser's proportionate share of all cash proceeds accruing from the sale of pelts and live animals from said Pine River Colony breeding grounds, as compensation for its services. There are other provisions in reference to removal of the animals to other breeding grounds, or removal thereof by the purchaser, and other provisions not here material. The contract is to continue in force for the life of the corporation, unless sooner terminated by the purchaser.

Considering the two contracts together, they constitute a sale of an interest in a profit-sharing scheme or venture and are a security,

as defined by the law cited, and the court correctly so charged the jury. State v. Gopher T. & R. Co. 146 Minn. 52, 177 N. W. 937; State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165; State v. Ogden, 154 Minn. 425, 191 N. W. 916; State v. Bushard, 164 Minn. 455, 205 N. W. 370; Kerst v. Nelson, 171 Minn. 191, 213 N. W. 904, 54 A. L. R. 495; State v. Swenson, 172 Minn. 277, 215 N. W. 177, 54 A. L. R. 490; State v. Code, 178 Minn. 492, 227 N. W. 652.

■ One other question requires consideration. The statute makes it a crime to sell unregistered securities by the issuer or owner thereof, or by his representative, when such sale is made in the course of repeated and successive sales of securities of the same issue. It defines "securities" as including an interest in or under a profit-sharing agreement or scheme. Defendant presented a plea of former jeopardy, and offered in support thereof the record in a case in Nicollet county wherein the defendant was informed against, charged with selling a set of two of the same kind of contracts to one A. K. Brown, and a partial trial thereof had, sufficient to place defendant in jeopardy in that case. That sale was charged to have been made in Nicollet county on January 31, 1928. It was for a sale of one trio of muskrats, to be bred, cared for, and kept on the company's Brainerd Oak Lawn Ranch. The indictment in our present case charges the sale to Schmidt, in Hennepin county, on February 8, 1927, of two trios of muskrats, to be bred, cared for, and kept on the company's Pine River Colony breeding grounds. The court sustained objection to the proof in support of the plea of former jeopardy.

It is clear that the two sales were separate transactions, made at different times, at different places, to different purchasers and involved separate rights and properties. Defendant contends that, as the sale for which defendant is tried must be a sale made in the course of repeated and successive sales, all sales of the same issue made in the course of repeated and successive sales constitute but one offense, and jeopardy in a prosecution for any one of such sales is a bar to any further prosecution for any sale made prior to the time of the finding of the indictment in the first case. The in-

formation in the Nicollet county case, having the same force as an indictment so far as this question is concerned, was presented in October, 1929. We conclude that under our securities law separate sales and not a course of business are aimed at and sought to be prohibited, and that each sale is a separate offense. We are not cited to much helpful authority.

16 C. J. p. 265, § 445, states the rule almost universally applied as follows:

"If the evidence which is necessary to support the second indictment was admissible under the former, was related to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar. But if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed in the same transaction."

The evidence in the present case did not include evidence of the sale to Brown in Nicollet county, and evidence of that sale would not have sustained a conviction here. To have claimed a conviction here for that sale would have been a clear departure from the present indictment.

The offense here charged was not a continuing offense, so that a prosecution for a sale in one county was a bar to a prosecution for a sale in a different county on a different date. State v. Preuss, 112 Minn. 108, 127 N. W. 438; State v. Summerland, 155 Minn. 395, 193 N. W. 699; City of Duluth v. Nordin, 166 Minn. 466, 208 N. W. 189.

The offense here charged is, in this respect, very similar to a prosecution for a sale of intoxicating liquor without a license, under our former laws regulating such sales. We believe it was never claimed that a prosecution for such a sale made in one county was a bar to a prosecution for a different sale made in another county, although the second sale was made before the finding of the first indictment.

Defendant cites Nielsen, Petitioner, 131 U. S. 176, 9 S. Ct. 672, 33 L. ed. 118. There the offense charged in both indictments was unlawful cohabitation and adultery with the same woman and in the same county, the only difference being that the second indictment charged the offense as being committed one day later than the last date named in the first indictment. As the exact date charged is not generally controlling, the second prosecution was held barred, and the offense of unlawful cohabitation was held a continuing offense. As to the allegation of the time see G. S. 1923 (2 Mason, 1927) § 10644; State v. Kampert, 139 Minn. 132, 165 N. W. 972.

In In re Snow, 120 U. S. 274, 7 S. Ct. 556, 30 L. ed. 658, three indictments charged defendant with unlawful cohabitation with the same women in the same county, the only difference being that each covered a separate part of a continuous time.

The case of Commonwealth v. Standard Oil Co. 120 Ky. 724, 87 S. W. 1090, was a prosecution for operating a wagon as a means of carrying on retail oil business without a license. The statute was held to be aimed at the conducting of an unlicensed business, not at particular sales.

To the same effect is State v. Roberson, 136 N. C. 591, 48 S. E. 596.

We find nothing in these cases applicable to the case at bar. The court did not err in excluding the offered evidence on the question of former jeopardy.

■ The court admitted evidence of other sales for the purpose of showing that the sale on which conviction was sought and had was made in the course of repeated and successive sales of like securities. It is urged as error that some of the sales, so proved, were made more than three years before the finding of the indictment. While no conviction could be had or is sought on these sales, evidence thereof was properly received for the purpose stated, whether such sales were made more than three years prior to the finding of the indictment or later. It is also claimed that defendant's connection with some of these other sales was not sufficiently shown so as to lay a foundation for the evidence. The question of whether suffi-

cient foundation existed was largely a question for the trial court. We hold there was a sufficient showing in that regard.

All assignments of error not hereinbefore specially mentioned have been examined and considered. We find no reversible error.

Order and judgment affirmed.

