## BARTLETT FRAZIER CO. v. HYDE et al.
### No. 8088.

District Court, N. D. Illinois, E. D.
Feb. 12, 1932.

Frederic Ullmann, of Chicago, Ill., E. R. Morrison, of Joplin, Mo., and H. L. Hassler, of Kansas City, Mo., for plaintiff.

Winston, Strawn & Shaw, of Chicago, Ill., for Board of Trade.

George E. Q. Johnson, of Chicago, Ill., H. B. Teagarden, and J. L. O'Brian, of Washington, D. C., for other defendants.

WILKERSON, District Judge.

This suit attacks on constitutional grounds portions of the Grain Futures Act (42 Stat. 998, 7 U. S. C. 1–17 [7 USCA §§ 1–17]), the regulations of the Secretary of Agriculture relative to reports by members of authorized boards of trade and the acts of agents of the departments of agriculture and justice in connection with the examination of the books and records of such members. A careful examination of the entire act is essential to an understanding of the questions here presented.

The act (section 4 [7 USCA § 6]) forbids the use of interstate communication facilities in the making of grain futures contracts and their execution for certain purposes unless the seller is the owner or grower of the grain or the contract is made through an authorized board of trade. Section 5 (7 USCA § 7) authorizes the Secretary of Agriculture to designate boards of trade as contract markets upon compliance with certain requirements, one of which, contained in paragraph (b) of section 5, is that the board

of trade in question shall require its members to file reports as prescribed by the secretary, showing the details of their cash and future transactions in grain, and to keep a record of such transactions for at least three years, accessible to inspection by representatives of the departments of agriculture and justice.

The act (section 6 [7 USCA § 8]) gives to the Secretaries of Agriculture and Commerce and the Attorney General power, after hearing, to revoke the designation of a contract market for failure to comply with section 5 (7 USCA § 7) and provides for judicial review of the order. It authorizes the suspension from trading privileges of any person violating the provisions of the act or attempting to manipulate grain prices, and gives to such person the right to have the order reviewed judicially. The Secretary of Agriculture is authorized to make investigations of the operations of boards of trade and publish the results thereof, with certain exceptions as to data disclosing individual business transactions, trade secrets, or names of customers. Section 9 (7 USCA § 13) penalizes criminally violation of the provisions of section 4 (7 USCA § 6) and the failure to evidence future contracts in writing as required in that section; also the use of the mails, etc., to transact false market information.

The Secretary of Agriculture has made general regulations requiring detailed reports from members as to aggregate business as well as the grain operations of the member and its customers. Daily reports are required where open interests exceed certain amounts. In addition to the regular reports, other reports and information are required from time to time. The government agents claim and exercise the right to examine the books of members without notice and without the pendency of any proceedings either in court or under the provisions of the act. The examinations are made for the purpose of finding out whether or not the grain futures act is being obeyed and of instituting criminal proceedings, if a violation of law is discovered. The Chicago Board of Trade, by its rules, passed pursuant to the act, requires its members to observe the law and the government regulations. If the Board of Trade fails to enforce this rule, by suspension or expulsion of its members, it is subject to a revocation of its designation as a contract market. Under this compulsion, therefore, the members of the Board of Trade have yielded to the government reg-

ulations concerning reports and have permitted an inspection of their books.

■ Plaintiff asserts that the decision of the Supreme Court in Chicago Board of Trade v. Olsen, 262 U. S. 1, 43 S. Ct. 470, 67 L. Ed. 839, as to the validity of the statute, must be limited to those portions which deal with the activities of the Board of Trade, and that the portions designed to put the government in possession of information as to the activities of the members whose trade makes up the business conducted on the board, is an unwarranted intrusion by the government into private business. The basis for the decision in the Olsen Case is stated as follows (page 41 of 262 U. S., 43 S. Ct. 470, 67 L. Ed. 839): "In view of the actual interstate dealings in cash sales of grain on the exchange and the effect of the conduct of the sales of futures upon interstate commerce, we find no difficulty under Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, and Stafford v. Wallace, supra [258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229], in concluding that the Chicago Board of Trade is engaged in a business affected with a public national interest and is subject to national regulation as such. Congress may, therefore, reasonably limit the rules governing its conduct with a view to preventing abuses and securing freedom from undue discrimination in its operations."

It is difficult to see how the purpose of the act can be carried out unless the regulatory agencies are able to inform themselves as to the transactions in futures conducted on boards of trade by their members. To sustain the part of the act prescribing the duty and conferring the power to regulate Boards of Trade and to strike down the part which puts the government in possession of the facts essential to an intelligent performance of its duty is to confer the shadow and withhold the substance of authority. It will serve no useful purpose here to follow counsel for plaintiff through their very able argument based upon their review of cases involving the inspection and production of private books under other statutes. In view of the reasoning in the Olsen Case, as this court understands that decision, the District Court should not hold invalid the portions of the act which are assailed in this case.

■ Accepting the entire statute as a valid regulatory act, the reports required by departmental regulations and the inspections of records made under direction of the Secretary of Agriculture are reasonable exercises of the power conferred. The court finds that the secretary has not transcended the limits of what is essential to the intelligent performance of the broad duties imposed upon him by the statute. To limit his right to inspect books to cases in which he has already obtained information justifying a formal complaint against somebody defeats the purpose of the act. Regulation of boards of trade as contract markets necessarily requires, as the basis for the exercise of the regulatory authority, information concerning the business, in the transaction of which the board is used as an instrument.

Nor does the evidence disclose any threatened acts of the government agents which would invade plaintiff's constitutional rights. The fact that some agent might attempt an arbitrary and unwarranted exercise of power is not a ground for invalidating the statute.

The ruling as to the validity of the statute requires, under the evidence in this case, that the bill be dismissed for want of equity.

Findings under the equity rule and a decree may be submitted by defendants on notice required by the rules of Court.