## Commonwealth v. Sofield

*Karl E. Richards*, district attorney, and *E. Le Roy Keen*, assistant district attorney, for Commonwealth.

*Herbert L. Maris*, for defendant.

WICKERSHAM, J., January 2, 1934.—This case involves a prosecution brought against the defendant, Hilton W. Sofield, under the Securities Act of 1927. The indictment charges that the defendant

"Being then and there an agent and/or salesman of securities for Eastern Fur Corporation, a Pennsylvania corporation, said Eastern Fur Corporation being a dealer in securities, he, the said Hilton W. Sofield, did then and there sell certain securities, to wit, 10 Income Coupon Contracts of the Eastern Fur Corporation to Laura M. Frutchey, . . . the said Hilton W. Sofield wilfully and unlawfully in behalf of said dealer, not being then and there registered with the Securities Commission of the Commonwealth of Pennsylvania as an agent, salesman, and/or dealer authorized to sell securities within the Commonwealth of Pennsylvania. . . ."

At the trial the defendant pleaded "not guilty", but as the evidence proceeded, changed his plea to "nolo contendere", which plea is equivalent to a confession by the principal: Buck v. Commonwealth, 107 Pa. 486, 489; where it was said by Mr. Justice Paxson, writing the opinion of the Supreme Court:

"The plea of *nolo contendere* is a mild form of pleading guilty. . . . 'It has the same effect as a plea of guilty so far as concerns the proceedings upon the indictment, and a defendant who is sentenced upon such a plea to pay a fine is convicted of the offence for which he was indicted' ".

Two questions were raised at the trial and argued at length before the court in banc, the first being that the Court of Quarter Sessions of Dauphin County was without jurisdiction as the contract was made in Bethlehem, in Lehigh County. The second contention is that the defendant was not engaged in the sale of securities but in the sale of rabbits.

There can be little question about the first contention. The prosecutrix testified that she was first interviewed by the defendant at Bethlehem; that she had not then fully made up her mind to purchase the rabbits; that on a Sunday afternoon the defendant brought the prosecutrix to Harrisburg in his automobile; the next day he met her at the Steele Building in the City of Harrisburg, where she was a teacher in the public schools of this city, and there he persuaded her to sign the contract. The price to be paid for the twenty rabbits which she purchased was $1,000. She did not have the cash. After the contract was signed she went to the bank, secured five share of stock of a bank at Nazareth, and assigned these five shares of stock to the defendant so that he could either sell said shares or borrow money upon them to pay for these rabbits. He could not sell the stock at the price demanded by the prosecutrix but borrowed $1,200 on said shares at a bank, $1,000 to pay for the rabbits, and $200 he was to give to the sister of prosecutrix to help her pay for the rabbits which she had purchased.

The defendant testified that the contract was signed on May 8th in Bethlehem, and that May 8th was Wednesday and not Monday, as contended by the plaintiff. The fact remains, however, that the stock was transferred to the defendant in Harrisburg, so that wheresoever the contract was signed (and we find from the evidence it was signed in Harrisburg) the sale was consummated in Dauphin County, and this is not denied by the defendant. We are of opinion, therefore, that the Court of Quarter Sessions of Dauphin County has jurisdiction in the instant case, and this contention of the defendant cannot be sustained.

The second contention is more difficult. The contract which the prosecutrix signed reads as follows:

"20 female white rabbits at $50 each, or a total of $1,000. . . .

"It is understood that the Eastern Fur Corporation is to ranch above rabbits, as per ranching contract form 216, which the purchaser has read and agreed to. The rabbits are to be placed on company's ranch within ten days after receipt of full payment for rabbits.

"The Eastern Fur Corporation reserves the right to cancel this contract, in case of default by the purchaser, and to retain whatever moneys have been paid on account of this contract as liquidated damages.

"Upon payment in full, the Eastern Fur Corporation will execute and deliver to the purchaser or his assignee, a bill of sale covering the above white female rabbits purchased.

"The purchaser hereby agrees that no statement, warranty, representation,

or inducement except such as is herein contained, has been made him in the purchase of the rabbits.

Date April 8, 1931
Corporation Representative
[signed] H. W. SOFIELD

> Purchaser [signed] LAURA M. FRUTCHEY
> Address, River Drive, R. D. 2
> Occupation, Harrisburg, Pa."

The money having been paid, the Eastern Fur Corporation issued to the prosecutrix a bill of sale which reads as follows:

"Know all men by these presents, that the Eastern Fur Corporation, a Pennsylvania corporation, in consideration of the sum of $1 to it in hand paid by Laura Frutchey, of River Drive, Harrisburg, Pa., at and before the ensealing and delivery hereof, does, by these presents, grant, bargain, sell, release, and confirm unto the said Laura Frutchey 20 white female rabbit breeders.

"To have and to hold the said 20 white female rabbit breeder to and for the use and behalf of the said Laura M. Frutchy, her executors, administrators, and assigns, absolutely.

"Witness the corporate seal of the Eastern Fur Corporation hereto affixed, duly attested to by its proper corporate officers this 17th day of April, A. D. 1931.

"Attest:                                   EASTERN FUR CORPORATION
    [signed] HILTON W. SOFIELD                By E. M. Sechler, ·
                    Secretary        (Seal)              Treasurer."
[defendant in this case]

If the transaction had stopped there, this case would not be in court, but with the said bill of sale the defendant mailed to the prosecutrix ten "income coupon contracts" of $100 each. We will not quote all the contents of any one of said income coupon contracts, which are rather lengthy. They are dated April 17, 1931, and assert that the prosecutrix is the purchaser in each case of two white female breeding rabbits. The company agrees to make a monthly advance of 2 percent on the amount of the purchase price. The "income coupon contracts" further stipulate that the owner (the prosecutrix in this case) agrees to sell to the company, and the company agrees to buy from the owner, all sound natural increase from owner's breeders being ranched by the company, and to credit owner with 25 cents per pound live weight regardless of current market price; and at the end of each year the credit of 25 cents per pound shall be divided into two equal parts, one of which shall be retained by the company as its compensation for services other than feeding, and the other part, after deducting all advances made by the company to the owner during the year, shall be paid to the owner; the company agrees to charge the owner 5 cents per pound, live weight, for feeding the owner's herd and its offspring during the life of this contract. The owner has the right to remove any or all breeders, and may do so at any time after having given the company 15 days' notice of said intention in writing; the owner further agrees that at the expiration of this agreement she will remove her white female breeders from the company's rabbitry within 10 days; should the owner fail to remove the same within 10 days it is agreed that the company may purchase at the then prevailing market quotations of New York and Philadelphia; and it is further agreed that this agreement is subject to all acts of assembly or rules and regulations of both State and Federal Governments, and that the company is not to be held responsible for any loss that may occur because of any act of God or contingencies beyond its control.

The income coupon contracts are signed by E. M. Sechler, treasurer, and Hilton W. Sofield, secretary, and also bear the seal of the company.

To these income coupon contracts were attached coupons for $2 each, to be detached monthly and paid to the owner, the prosecutrix in this case. Two of these coupons were removed, and one was paid by the defendant company, but the other was not paid and the company went into bankruptcy.

However much the company and the defendant, its secretary and agent, have camouflaged the purposes and ends of these income coupon contracts, we think, nevertheless, they are securities within the contemplation of the Securities Act of April 13, 1927, P. L. 273. The prosecutrix was to receive 24 percent annually on her investment. Each one of these contracts represents two rabbits. The coupons represent the defendant's contention of advanced payments on the proportionate yield of the increase in rabbits owned by the prosecutrix. Each coupon reads as follows:

"Contract No. ———.

"6 months after date of attached contract Eastern Fur Corporation will advance to bearer at its office $2.00.

E. M. Sechler, Treasurer."

The effect of the contract is to carry out the representations made by Sofield, the agent, that the prosecutrix was to receive $24 a year on her investment, and the coupons represent this amount.

Section 2(a) of the Securities Act defines the term "security" as follows:

"The term 'security' or 'securities' shall include any bond, stock certificate under a voting trust agreement, treasury stock, note, debenture, certificate in or under a profit-sharing or participation agreement, subscription or reorganization certificate, oil, gas or mining lease or certificate of any interest in or under the same, evidence of indebtedness, or any certificate or instrument representing or secured by an interest in the capital, assets or property of any corporation, unincorporated organization, association, trust, or public corporation or body, or any other instrument commonly known as a security."

We think these "income coupon contracts" which the defendant sold to Miss Frutchey are securities for two reasons: (a) They are certificates in or under profit-sharing or participation agreement; and (b) they are evidence of indebtedness under the agreement. It does not appear anywhere in the testimony that there was a separation of any specific rabbits. It was mentioned by counsel for the defendant that they were earmarked, but the defendant himself says nothing about it. It was the duty of the corporation under the contract to make a yearly accounting to the prosecutrix, and in this account it was the corporation's duty to set forth the natural increase of the rabbits that had arrived at marketable age. On the basis of such increase, the owner was to be credited with 25 cents per pound live weight, with deductions as hereinbefore mentioned; and from the profit was to be deducted the $2 per month, as appears in the income coupon contracts from which we have quoted.

In Gracchi et al. v. Friedlander, 93 Cal. App. 770, 270 Pac. 235, which was also a rabbit contract, the court held that a contract consisting of orders for a certain number of rabbits and hutches, authorizing vendors to sell any rabbit and to replace it, and for division of profits between parties, without providing for the separation or identification of any specific rabbit or hutch, was a security within the meaning of the Securities Act. See also State v. Robbins, 185 Minn. 202, 240 N. W. 456, where it was held that the sale of contracts by a fur farm relating to profit-sharing in raising muskrats was a sale of securities; and many other cases to which we might refer.

476

We are of opinion, therefore, that the "income coupon contracts" are securities within the meaning of the Securities Act from which we have quoted. There is no evidence that the Eastern Fur Corporation was registered as a dealer in securities in Pennsylvania or that the defendant was registered as an agent authorized to sell securities. For the reasons we have above stated, we find the defendant guilty of violating the Securities Act of 1927.

And now January 2, 1934, it is ordered, adjudged, and decreed that the defendant is guilty of the misdemeanor with which he stands indicted and the district attorney is directed to bring the defendant into court for sentence under the verdict which we have entered.    From Homer L. Kreider, Harrisburg, Pa.