## NATIONAL LABOR RELATIONS BOARD v. NEW ENGLAND TRANSP. CO. et al.

District Court, D. Connecticut.
April 22, 1936.

Charles Fahy, Malcolm F. Halliday, and A. Norman Somers, all of Washington, D. C., for applicant.

W. L. Barnett, of New Haven, Conn., for respondents.

HINCKS, District Judge.

This matter comes before the court upon a show-cause order issued upon the application of the National Labor Relations Board ("board") under section 11 (2) of the National Labor Relations Act ("act"), 29 U.S.C.A. § 161 (2), seeking an order of court requiring the respond-

ents to comply with the subpœna of the board heretofore issued.

The subpœna, which is the subject-matter of the application, calls for the production of the "pay roll" of the corporate respondent in aid of an investigation by the board preliminary to an official election of representatives for respondent's employees, under the provisions of section 9 (c) of the act. It is conceded that the respondents, both the corporation and Mr. Smith, its executive, have heretofore disregarded and refused compliance with the subpœna.

The first objection to the pending application is that heretofore a similar application was made by the board to the United States District Court for the District of Massachusetts; and that while said application was there pending the respondents herein filed in said court a bill in equity to restrain the board from further action in the premises. However, the fact is that the application by the board to the court in Massachusetts was withdrawn before the application herein was made. And since the hearing held upon the application here pending, the Massachusetts court has quashed the subpœnas issued upon the bill in equity there pending on the ground that the members of the board who were named as the respondents in said bill had never been served within the District of Massachusetts. Consequently, the pendency of another action or proceeding in the District Court of Massachusetts is not now available to these respondents as a defense against the application now before this court.

But the respondents further claim that the National Labor Relations Act (29 U.S.C.A. §§ 151–166) is wholly unconstitutional. If this claim be sound, it necessarily follows that any investigation undertaken by the board under the act is without the sanction of fundamental law. In such an event, of course, the subpœna of the board calling for the respondents' pay roll would constitute a process in aid of an extra-legal inquisition to which this court ought not to lend its aid. Jones v. Securities and Exchange Commission, 56 S.Ct. 654, 80 L.Ed. — (April 6, 1936). It is necessary, therefore, to consider whether the full sweep of the respondents' contentions has merit.

Looking then to the text of the act, we find:

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." (29 U.S.C.A. § 157.)

Surely there is nothing here inconsistent either with the letter or the spirit of the Constitution.

Section 9 (c), 29 U.S.C.A. § 159 (c), provides as follows:

"Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 [section 160 of this title] or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives."

If these two operative provisions of the act just above quoted are valid and constitutional, clearly the procedural provisions of section 11 (1) and (2), 29 U.S.C.A. § 161 (1, 2), in so far as they are adapted to aid the operative provisions above quoted, are likewise valid and constitutional. This conclusion must follow even if all the other operative provisions of the act be beyond the scope of the federal power, especially in view of the separability provision contained in section 15 of the act (29 U.S.C.A. § 165).

That section 7 of the act (29 U.S.C.A. § 157) is valid is neither disputed nor disputable.

The validity of section 9 (c) is almost equally plain. For in Pennsylvania R. Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536, the right of the Labor Board under the Transportation Act of 1920 (41 Stat. 456) to decide who may represent employees for the purposes of that act was recognized. And there, as here, those whose right of representation was involved were employees not necessarily directly participating in the physical movement of interstate commerce, of an employer largely engaged in interstate commerce. To be sure, in the Labor Board Case, it was held that under the Transportation Act of

1920 the decisions of the Labor Board fixing reasonable wages and working conditions were not intended to be legally enforceable. But in aid of the authorized investigations by that board, the Act of 1920 by section 310 (45 U.S.C.A. § 142) provided provisions for compulsory process similar to those provided in this act. And so here, section 9 (c) of this act, considered quite apart from the obligatory provisions contained elsewhere therein, must be considered as conferring a valid power upon the board and in aid of that power the process provided by section 11 (1) and (2) is valid and enforceable. Such, at least, is my holding.

To be sure, the act in section 8 (5), 29 U.S.C.A. § 158 (5), provides that the employer must bargain collectively with the representatives elected by a majority of his employees, and in 9 (a), 29 U.S.C.A. § 159 (a), that he must bargain with such representatives exclusively, that is to say, that he must not bargain collectively with representatives of the minority. As to the constitutionality of such provisions, there appears to be a widespread difference of opinion among the lower federal courts. To this discordant chorus there is no need to add my voice at present. If a properly supervised election is held, it may well be that no question will thereafter arise with respect to the provisions of sections 8 (5) and 9 (a). If, however, the question actually arises, it will be time enough then to give it due consideration.

■ One further question is raised by the respondents. It is contended that the application is too broad in calling for the "pay roll" of the entire company except for the supervisory employees who have authority to employ and discharge. As to this, it is true that the moving papers disclose that the pending investigation and the contemplated election relate only to the respondents' mechanical department. That being so, I should not suppose the board would be directly interested in the entire personnel. Nevertheless, the board may properly have an indirect interest therein. For it well may be that certain employees may have overlapping duties; some may be employed part time in the mechanical department and part time elsewhere. In the first instance, at least, it rests with the board to determine whether any such employees for purposes of the contemplated election should be classified with the mechanical department. I hold, therefore, that the board is entitled to the list of the entire personnel, in order that it may after due consideration make an accurate classification.

■ The objection that a blanket disclosure of wages is an unwarranted invasion of the respondents' privacy it is not necessary to consider because not claimed by the board. The board's brief makes it plain that in seeking the "pay roll" it means only a list of the personnel. Thus understood, the application of the board is granted.

An order fixing the time and place for compliance with the subpœna may be settled in chambers on notice unless, as I hope, the parties can agree on the form of order.