### SECURITIES AND EXCHANGE COMMISSION v. TUNG CORPORATION OF AMERICA et al.

District Court, N. D. Illinois, E. D.
April 26, 1940.

372

Chester T. Lane, of Washington, D. C., for plaintiff.

Myer H. Gladstone, of Chicago, Ill., for defendants.

HOLLY, District Judge.

Securities and Exchange Commission, hereinafter referred to as the Commission, has filed its petition alleging that the Commission had reasonable grounds to believe that respondent Tung Corporation of America was engaged in dealing in unregistered securities and praying that respondent corporation and George Vasen, its secretary, be required to show cause why an order should not be entered directing them to appear before some officer designated by the petitioner and produce documentary evidence mentioned in a certain subpoena duces tecum theretofore issued under the authority of the Securities and Exchange Commission.

Respondent's grounds of defense to the petition are as follows:

(a) The respondent is not selling or otherwise dealing in securities.

(b) That certificates of interest in an investment contract are not the subject of

interstate commerce and Congress may not regulate the buying and selling of them.

(c) Respondent is not using the United States mails or the instruments of interstate commerce in carrying on its business.

(d) That the Commission alone, and not an officer thereof must determine what documents shall be produced.

It appears from the petition and answer that respondent Tung Corporation of America is a corporation duly organized and existing under the laws of the State of Illinois. It has its principal place of business in the City of La Grange, in the County of Cook and State of Illinois; George Vasen is secretary and treasurer of said corporation. The corporation is the owner of certain lands in the State of Mississippi upon which Tung trees have been planted. Respondent corporation is engaged in the business of selling this land in small tracts and entering into contracts with the purchasers for the development of the land. In each case of conveyance it enters into one of two types of contract, each containing provisions for leasing of the land to respondent and employing respondent corporation as the exclusive manager and agent to properly care for all of the tung trees planted and growing on said land, respondent corporation agreeing to keep removed all other trees and bushes, and all growth from the land so planted with tung trees; to fertilize and thoroughly cultivate, prune and properly "caretake" the orchard from the day of planting during the life of the contract; to replace all trees which may be destroyed, damaged or die during the period of the contract and harvest and market the crops from said trees.

In one of these forms of contract respondent corporation leases from the purchaser the land between the rows of tung trees for a period of three years from the date of the contract and agrees to pay to the purchaser on the first day of each month, in advance, the sum of $1.75 per acre per month. After the third year of the contract the purchaser agrees to pay the respondent corporation for its aforesaid services $2.50 per acre for the fourth year; $3.50 per acre for the fifth year; $5 per acre for the sixth year and $7.50 per acre for the seventh and each year thereafter, for the life of the contract, thirty years.

As to the other form it is said in the answer that "in the other form of lease-contract the grantee leases the land between the trees to the Tung Corporation of America and receives no rent therefor but the consideration during the first three years of the contract is the service or services, to be rendered the grantee by the Tung Corporation of America in managing the said acreage * * *."

In both of these forms it is provided that respondent is entitled to all of the income from the crops raised between the rows of tung trees and from any other use to which the said land between the tung trees may be put by the respondent corporation.

The Commission contends that under the provisions of Sec. 20(a) of the Securities Act of 1933[1] the court may not now pass upon the question of whether the business respondent is engaged in is selling securities or whether respondent is engaged in interstate transactions or is using the mails in the transaction of its business.

▉ I cannot wholly agree with the Commission on this point. If the power of the court is to be invoked to compel obedience to the subpoena it must be made to appear that the Commission has reasonable grounds to believe that the respondent is engaged in some activity which the Commission is authorized to supervise. And respondents having denied that they are engaged in selling securities or that they do an interstate business or use the United States mails in carrying on their business they are entitled to a hearing on those questions. The Commission may not have an order on a corner grocer to produce books and documents merely on its allegation that he is engaged in a business that comes within the provisions of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., and that he has violated the terms of that Act. The Commission must at least show that it has reasonable grounds to believe that the person charged is engaged in transactions which come within the purview of the statute.

Petitioner cites Andrews v. Montgomery Ward & Co., D. C., 30 F.Supp. 380, in support of the proposition that the court should order respondent to obey the subpoena without requiring petitioner to make a showing. But the questions presented by the two cases are different. In the Montgomery Ward case it was not disputed that the respondents were engaged in interstate commerce, and the documents called for by the subpoena

---

[1] 15 U.S.C.A. § 77t (a).

were records which the law required respondent to keep. Petitioner also cites Consolidated Mines v. Securities & Exchange Commission, 9 Cir., 97 F.2d 704, but it is recited in the opinion in that case that respondent corporation did not deny that the mails and the instruments of interstate commerce were used for carrying on their business of dealing in securities, their defense being that the sales of stock complained of were made by others. As to that defense the court said the Commission had substantial evidence to the contrary.

■ Before respondents may be called upon to obey the subpoena, there must be a showing that the Commission had reasonable grounds to believe that they were selling securities and using the mails or instruments of interstate commerce to carry on the business.

■ They deny they were dealing in securities.[2] The nature of the business is set out above. Counsel say respondents were merely selling the land, an activity over which the Commission has no control, and taking leases back from the purchasers. But its dealings involve much more than that. The purchaser is not buying land for its present worth. The lure is the prospect of an orchard of tung trees, which respondents' corporation contracts to plant and bring to a producing stage. The contract is of the nature of a profit sharing contract which continues in force for a period of many years. Respondent corporation is to pay rent and have the product of the land for the first three years, agreeing in return to perform the services recited above. As a result respondent has the purchase price of the land, but whether the purchaser will get what he has bargained for, a producing orchard of tung trees, depends on whether the corporation faithfully performs its obligations and the many contingencies which all persons engaged in agricultural pursuits must face. Whether the purchaser finds the land in condition to produce profitably at the end of the three years, he has bound himself to make payments to the seller for 27 years thereafter at the rate of $2.50 per acre for the fourth year, $3.50 per acre for the fifth year, $5 per acre for the sixth year and $7.50 per acre for the 24 years thereafter. Certainly this is an investment contract. While no case involving contracts exactly like the present one can be found in the books (the ingenuity of corporations and salesmen in devising forms to evade the provisions of "blue sky" laws seems to be limitless) the courts have not been hesitant in looking through the form to discover the real nature of the transaction.[3]

■ But respondents contend that though their contracts be construed to be investment contracts, Congress may not arbitrarily classify them as securities. Further, that entering into such agreements even with residents of other states is not engaging in interstate commerce and Congress has no power to regulate such transactions, citing Ware & Leland v. Mobile County, 209 U.S. 409, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031, Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, and New York Life Ins. Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332. Whether the entering into such contracts is commerce of the character that Congress may regulate I am not presently concerned. The Act gives the Commission power to inquire concerning the activities of business of this character using the United States mails,[4] and on this subject the power of Congress is plenary. If it chooses to class an investment contract as a security it may do so; and may require respondents engaged in the business of entering into investment contracts, and using the United States mails in carrying on the business, to submit to investigation. In Badders v. United States, 240 U.S. 391,

---

[2] "The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." 15 U. S.C.A. § 77b(1).

[3] Securities and Exchange Comm. v. Crude Oil Corp., 7 Cir., 93 F.2d 844; Securities and Exchange Comm. v. Universal Service Ass'n, 7 Cir., 106 F.2d 232; State v. Robbins, 185 Minn. 202, 240 N.W. 456. And see cases cited in the note 87 A.L.R. 82.

[4] 15 U.S.C.A. §§ 77e, 77t (a).

36 S.Ct. 367, 368, 60 L.Ed. 706, the court said: "The overt act of putting a letter into the post office of the United States is a matter that Congress may regulate. Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877. Whatever the limits to the power, it may forbid any such acts done in furtherance of a scheme that it regards as contrary to public policy, whether it can forbid the scheme or not."

And in Public Clearing House v. Coyne, 194 U.S. 497, 507, 508, 24 S.Ct. 789, 793, 48 L.Ed. 1092, it was said:

"[Congress] may also refuse to include in its mails such printed matter or merchandise as may seem objectionable to it * * *."

And "it may * * * forbid the delivery of letters to such persons or corporations as, in its judgment, are making use of the mails for fraud or deception * * *".

■ But respondents deny that they are using the mails in the conduct of the business. Here we have an issue of fact. A party may not be required to submit to an examination concerning his business affairs on the statement, simply, of an officer of the United States that he is using the mails. He has a right to be heard on that question. Here, again, there must at least be a showing that the Commission had reasonable grounds for believing respondents were using the United States mails in conducting their business.

■ Counsel also contend that they are exempt under the terms of Section 3(a) (11) of the Act, as added by Act June 6, 1934, § 202(c), 15 U.S.C.A. § 77c(a) (11), which provides that the provisions of the Act shall not apply to any security which is part of an issue sold only to persons residents only of the state of which the seller is a resident, or, if a corporation, to residents of the state of its incorporation. They say they have sold only to residents of Illinois which is the state of which Vasen is a resident and in which the corporate defendant was incorporated. I think respondents are entitled to a hearing on that question.

It is further urged by respondent that the officer of the Commission and not the Commission has designated the documents to be produced, while only the Commission has such authority. I do not agree, but if there is a question as to what documents are pertinent and relevant I may determine that question upon the hearing.

A time for such hearing will be set upon notice and motion.