## PERKINS, Secretary of Labor, v. ENDICOTT JOHNSON CORPORATION et al.

District Court, N. D. New York.

Feb. 1, 1941.

Ralph L. Emmons, U. S. Atty. for Northern District of New York, of Binghamton, N.Y. (Rawlings Ragland, Sp. Asst. to Atty. Gen., and Clifford P. Grant, of Washington, D.C., Atty. in Department of Labor, of counsel), for the Government.

Howard A. Swartwood, of Endicott, N. Y. (William H. Pritchard, Jr., of Endicott, N.Y., of counsel), for defendants.

BRYANT, District Judge.

This is a proceeding to obtain an order of the Court directing the Endicott Johnson Corporation and its Secretary to obey certain subpoenas duces tecum issued by the Secretary of Labor in an administrative proceeding under the Act of June 30, 1936, 49 Statutes 2036, known as the Walsh-Healey Public Contracts Act, 41 U. S.C.A. § 35 et seq. Jurisdiction to issue such an order is provided by Section 5 of the Act.

Plaintiff maintains that the Court has power, in a summary proceeding, to grant the requested order. However, to avoid any question of procedural irregularity, she has followed the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, governing plenary actions. The proceeding was initiated by the filing of a pleading denominated "complaint and application". Issue was joined by the filing of a joint answer which later, by stipulation, was limited relative to construction to be placed upon certain denials contained therein.

Plaintiff now asks for relief in three alternative forms: (1) By motion for judgment on the pleadings; (2) by motion for summary judgment; (3) by motion for an order directing compliance with the subpoena.

Plaintiff's contention can be fairly summarized by stating that, regardless of whether or not a plenary civil action is required, she is entitled to the relief contemplated by alternative (1) and (2) and that (3) becomes academic. However, should the court hold otherwise on alternatives (1) and (2) then her contention is that only a summary proceeding is needed to obtain an order to enforce an administrative subpoena and that the Federal Rules of Civil Procedure are not applicable to restrict such a summary proceeding.

■ Discussion of procedure seems to be unnecessary. The question at issue is whether or not the court, without further showing, will require defendants to obey the departmental subpoena. Decision of the question will affect the parties the same whether the present controversy be considered a plenary action or a summary proceeding. On this point, suffice to say that I do not consider it necessary to follow the Federal Rules controlling plenary actions. Relief can be granted in a summary proceeding. National Labor Relations Board v. Goodyear Tire & Rubber Co., D.C.N.D. Ohio, 36 F.Supp. 413, decided Nov. 27, 1940.

Endicott Johnson Corporation is engaged in manufacturing in four cities in New York State, all of which are within a radius of about nine miles. It operates twenty-two footwear factories, six tanneries and twenty-six independent departments. The shoe factories are located in all four cities; the tanneries are all in Endicott and the rubber mill is in Johnson City. In the fall of 1936, the corporation received fifteen orders from the Government. Twelve of these orders were for the manufacture of men's leather welt shoes; two for the manufacture of gymnasium shoes and one for arctic overshoes. All orders were completed by about October 11, 1938. The corporation received these orders or contracts as a result of bids submitted. In each bid the corporation was required to submit the place or places where the articles would be manufactured. The specifications covering this requirement reads:

"Names and locations of factories: Bidders must state in space provided below names and locations of the factories where manufacture of the item bid upon will be performed. The performance of any of the work contracted for in any place other than that named in the bid is prohibited,

unless the same is specifically approved in advance by the contracting officer. If more than one place of manufacture is named, the quantity to be manufactured in each place must be given:—

"Names and Locations
　of Factories　　　　　　　Quantities."

In compliance with above requirement the corporation designated the George F. Tabernacle Factory, Binghamton, N.Y., as the place for the manufacture of men's leather welt shoes; the Jigger Factory, Johnson City, N.Y., as the factory for the manufacture of gymnasium shoes, and the Sunrise Factory, Johnson City, N.Y., as the place of manufacture of arctic overshoes. These factories do not make or tan leather, neither do they make rubber soles, out soles or cartons. These articles are produced in tanneries, rubber mills and factories located at distances ranging from two to nine miles from the designated factories. These facts were known to the Labor Department (Public Contracts Division), if not at the time of the making of the contract then very soon thereafter, because periodical inspections were made. No complaint of noncompliance by the four designated factories with the provisions of the Walsh-Healey Act has been made.

In July, 1938, when thirteen of the fifteen contracts had been completed, a representative of the Department of Labor asked for the records of the tanneries at Endicott and the rubber mill at Johnson City, basing the request upon the ground that these plants had produced the leather, heels and soles used in the filling of the orders. This request was refused upon the ground that the provisions of the Walsh-Healey Act, as they related to the fifteen contracts, did not cover operations in the tanning of leather or the manufacture of rubber. In February, 1939, about four months after the final completion of the contracts, a second demand for inspection was made and refused.

The present controversy really started October 6, 1939, a year after completion of the orders. At that time an administrative complaint was served. An amended complaint was served Nov. 16th. The amended complaint charged the corporation with violation of the provisions of the fifteen contracts because of noncompliance with wage and hour provisions of the contracts in the tanneries and rubber mill where the leather, heels and soles were produced. The Corporation answered setting up the ·

defense that the tanneries and rubber mills are not manufacturers within the purview of the Act and contracts. On December 9, 1939, a subpoena duces tecum was served upon the corporation and its secretary. The subpoena called for production, before a hearing officer, of records which can be divided into three classes. One class can be referred to as the records of the four designated footwear factories. These, I understand, were made available. The other two classes can be described as the records of the tanneries, rubber mills, sole cutting, counter and carton plants or departments, where it is claimed some of the material used in the filling of the contracts was produced. These records were not produced at the hearing held on December 13th.

On January 15, 1941, the complaint in this action was filed. It sets forth the making of the contracts, the fixing of the minimum wages and maximum hours for employees engaged in the performance of the contracts; the belief that certain provisions of the contracts have been breached and the issuance of the administrative complaint and amended complaint and the notice of a hearing for December 13, 1939, as above mentioned. It then generally summarizes the allegations of the amended complaint. In substance, it alleges noncompliance with the maximum hour and wage provisions in the tanneries, rubber mill and carton department and noncompliance with the wage provisions in the sole cutting departments and the belief that the persons employed in these plants and departments were employed in the performance of the contracts. The complaint then alleges generally the Department's authority to issue process, conduct hearings, make findings, etc. It also alleges issuance of subpoena and refusal to comply and, for relief, demands an order requiring defendants to obey the subpoena. Defendants, by denial and averments in their answer, make the claim that the operations of the tanneries and rubber mills are not covered by the Walsh-Healey Act and that, therefore, the Department of Labor has no authority over the records.

Defendants, in support of their position, have, through pleadings and affidavits, set forth facts regarding the industries, usages and interpretations of the trade, interpretations and classifications made by the N.I.R.A., Census Department and other governmental agencies, rules and regulations of the Commerce Department, Public Contract and Wage and Hour Divisions of the Labor Department, etc. To say the least, they have raised an issue, partly factual and partly legal, that sometime and somewhere must be decided. They say it must be here decided because, if they are right, then an order directing compliance with the subpoena would be the furthering "of an extra-legal inquisition to which this court ought not to lend its aid". National Labor Relations Board v. New England Transportation Co., D.C., 14 F.Supp. 497, 498.

Plaintiff makes no finding nor positive averment of authority to examine the records. She makes no attempt to refute or contradict defendant's claim. She says that the question, as to whether such employees were employed in performance of the Government contracts, is one of the questions in issue under the administrative complaint. She contends that the provisions of Section 5 of the Act, above named, deprives this court of jurisdiction to determine that question in this action or proceeding. I cannot agree with that contention. I believe that the court's powers and duties in this regard are correctly stated in Securities and Exchange Commission v. Tung Corporation, D.C., 32 F.Supp. 371.

The Act in question does not give general investigatory powers. It gives investigatory powers only over factories and employees engaged in the performance of governmental contracts. Defendants say the records sought do not cover such factories or employees. On this issue they are entitled to a hearing. The court should be reasonably satisfied that the Secretary has authority to inspect before ordering production.

Viewing this controversy from a practical as well as a legal angle, a pre-determination of the right to examine before actual examination seems to be the logical course to follow. In these days of stress, when the time of courts, Government officials and manufacturers is at a premium, it would seem that a saving of both time and money may be effected through determination of right to examine before beginning the actual examination of hundreds and thousands of records.

Motions for judgment on the pleadings are denied. I consider this a summary

proceeding. Decision on motion for order should not be made until after a hearing on the issue raised. Date for such a hearing will be named upon request.