**PEOPLES NATURAL GAS CO. et al. v.
FEDERAL POWER COMMISSION.**

No. 8048.

United States Court of Appeals for the
District of Columbia.

Argued Jan. 8, 1942.

Decided Feb. 16, 1942.

Rehearing Denied April 13, 1942.

Mr. Carl McFarland, with whom Mr. J. Edward Burroughs, Jr., was on the brief, both of Washington, D. C., for appellants.

Mr. Richard J. Connor, General Counsel, Federal Power Commission, with whom Mr. Charles V. Shannon, Attorney, Federal Power Commission, was on the brief, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from an order of the District Court which requires appellants, the Peoples Natural Gas Company and its president, to allow appellee, the Federal Power Commission, access to certain of the Company's books and records.

The Commission filed in the District Court a motion which states, among other things, that it has begun an investigation to determine whether the Company is a natural-gas company within the meaning of the Natural Gas Act,[1] and whether the Company's rates and charges subject to the Commission's jurisdiction are unjust, unreasonable, unduly discriminatory, or preferential; that though the Commission has been given access to books and records which concern the Company's status as a natural-gas company, appellants have refused, despite subpoenas, to produce the books and records which are now demanded; and that these contain information regarding the cost of the Company's property, its expenses, and its revenues, all "essential to enable the Commission to determine whether the rates and charges of The Peoples Natural Gas Company subject to the jurisdiction of the Commission, are unjust, unreasonable, unduly discriminatory, or preferential."

The Natural Gas Act provides that all sales "subject to the jurisdiction of the Commission" must be at reasonable rates,[2] and that when the Commission finds that a rate for such a sale is unreasonable, it may fix a reasonable rate to be charged thereafter.[3] The Commission "may investigate any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provision of this chapter,"[4] and may "require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records" which it finds relevant to the investigation.[5]

The Commission's motion, apart from annexed exhibits, does not clearly allege any facts which show that the Commission had jurisdiction to demand these books and records. But in Paragraph IX the Commission annexed to and expressly "made a part of" its motion, as Exhibit F, a copy of an order by which it had directed its counsel to bring the present proceedings. In Paragraph (d) of Exhibit F the Commission states: "The testimony and evidence adduced [at a certain hearing] shows, among other things, that Peoples sells natural gas at its Pew compressor station in Clarion County, Pennsylvania, to New York State Natural Gas Corporation, an affiliated company, and that the latter immediately transports said natural gas into the State of New York where it sells the same to others for resale for ultimate public consumption * * *"

■■■ The sales thus described are sales in interstate commerce.[6] Appellants urge that the Natural Gas Act does not give the Commission jurisdiction over all sales of natural gas in interstate commerce. But the Natural Gas Act does apply, among other things, to "the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use." That language exactly covers the sales described in Exhibit F. We cannot disregard the plain language of the statute because the Commisson at one time interpreted it narrowly,[7] or because the reports of Congressional committees show an intention not to "disturb" state regulation, or because appellants fear duplicate regulation. The Act applies to "natural-gas companies engaged in such * * * sale,"[8] and defines "natural-gas company" as a company "engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."[9]

■■■ Rule 10(c) of the Rules of Civil

---

[1] 15 U.S.C.A. §§ 717–717w, 52 Stat. 821–833.

[2] § 717c(a).

[3] § 717d(a).

[4] § 717m(a).

[5] § 717m(c).

[6] Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549; Missouri v. Kansas Natural Gas Co., 265 U.S. 298, 44 S.Ct. 544, 68 L.Ed. 1027; Illinois Natural Gas Co. v. Central Illinois Public Service Commission, 314 U. S. 498, 62 S.Ct. 384, 86 L.Ed. ——; United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 568, 569, 59 S.Ct. 993, 83 L.Ed. 1446; Currin v. Wallace, 306 U.S. 1, 10, 59 S.Ct. 379, 83 L.Ed. 441.

[7] In the Matter of Columbian Fuel Corp., Opinion No. 48 (Docket No. G-143), 35 P.U.R.,N.S., 3.

[8] U.S.C.A. Tit. 15, § 717 (b).

[9] § 717a(6).

Procedure, 28 U.S.C.A. following section 723c, provides that "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Counsel for appellants recognize that statements which the Commission makes in one of its other exhibits are, in effect, made in its motion,[10] and appear to recognize that statements which appellants themselves make in their Exhibit 1 are, in effect, made in their answer. Yet counsel state that the Commission "made no allegation whatever in its motion" with respect to the Company's sales to the New York State Natural Gas Corporation. We do not know why counsel ignore the quoted portion of Paragraph (d) of the Commission's order. Rule 10(c) requires us to hold not merely that Exhibit F is "a part" of the motion, but that it is a part of the motion "for all purposes"; i. e., for every reasonably possible purpose. One such purpose was to show that the Commission had formally invoked the aid of the court; but another such purpose was to show, by setting forth jurisdictional facts, that it could legally invoke such aid. It follows that the statements which the Commission makes in Paragraph (d) of Exhibit F must be regarded as made in the motion. Perhaps counsel's view is that the Commission, by incorporating the order in the motion, did not then make, but merely asserted that it had made, the statements which the order contains. We think such a view would be too narrow. The question is not one of grammatical analysis. The question is whether the motion, in the light of Rule 10(c), fairly conveys the idea that the Commission reasserts in the motion the facts which it asserts in the order. "I said" often includes "I say," and a pleader's statement that he has previously found or asserted a fact may amount to a present assertion of the same fact. The Supreme Court, in an opinion by Mr. Justice Holmes, has applied this principle. It has held that a plea by the Secretary of the Interior that he did, on a previous occasion, determine a fact to be true, "affirms not merely the past but the present determination" of the Secretary.[11]

■ Appellants have nowhere denied the statements in Paragraph (d) of Exhibit F. Their answer to the Commission's mo-tion denies that the Company is a natural-gas company within the meaning of the Natural Gas Act, and states that it "does not transport natural gas in interstate commerce or sell natural gas in interstate commerce for resale for ultimate public consumption for domestic, commercial, industrial, or any other use." But these denials are in the nature of legal conclusions, since they turn, or may turn, on the meaning of the legal terms "natural-gas company" and "interstate commerce." They cannot be deemed denials of the statements of fact in Exhibit F. Rule 8(d) of the Rules of Civil Procedure provides that "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." It follows that appellants must be taken to have admitted the truth of the Commission's statements of fact in Paragraph (d) of Exhibit F. Since we are required to construe the pleadings so as to do substantial justice,[12] it is pertinent to observe that appellants have at no time challenged the statements in question, or suggested that they would have challenged them if they had conceived them to be presently asserted in the motion. On the contrary; in Exhibit 1 attached to their answer, they set forth facts which are entirely consistent with, and nearly cover, these statements. During oral argument in the District Court counsel conceded that the Company often sells gas to the New York company, and impliedly conceded that this gas is sold for transportation to New York and resale. On this appeal counsel again concede that the Company sells to the New York company gas which it transports to New York. Appellants nowhere suggest that these sales are not "for resale for ultimate public consumption."

■ It follows from the quoted provisions of the Natural Gas Act that the Commission is authorized to investigate and determine whether the charges for the admitted sales described in Paragraph (d) of Exhibit F are reasonable.

■ Appellants do not deny, and must therefore be understood to admit, the Commission's allegation that the demanded books and records contain information regarding the cost of the Company's property,

[10] They point to an Exhibit C as showing the "position taken by the Commission in its pleadings."

[11] United States ex rel. West v. Hitch-cock, 205 U.S. 80, 85, 27 S.Ct. 423, 425, 51 L.Ed. 718.

[12] Rules of Civil Procedure, Rule 8(f).

its expenses, and its revenues.[13] This information is clearly pertinent to the question whether the charges referred to are reasonable. The Commission was therefore authorized to subpoena these books and records.

The Natural Gas Act provides that if the Commission's subpoena is not obeyed, the Commission may "invoke the aid" of a court, which may "issue an order requiring such person to appear before the Commission * * *, there to produce records, if so ordered."[14] Upon appellants' refusal to comply with its subpoenas, the Commission invoked the aid of the District Court, which issued the appealed order.

▆▆▆▆▆▆ Appellants' answer denied, and the Commission's motion did not in terms assert, that the Company is a natural-gas company subject to the Commission's jurisdiction. But, as we have shown, the motion asserted, and the answer did not deny, facts from which jurisdiction follows. The Commission's jurisdiction, like other legal conclusions, need not be expressly pleaded. Appellants complain that, although they demanded an opportunity to present evidence on "the jurisdictional facts," the District Court allowed only an oral argument and thereby denied them a full hearing. When allegations of necessary jurisdictional facts are denied, they must be proved before an administrative demand for the production of books and records will be enforced; and the court must accord the respondent a full hearing, including the opportunity to present oral testimony.[15] But since these appellants admitted facts which showed the jurisdiction of the Commission, the taking of evidence concerning them was unnecessary. A civil defendant who asserts no valid defense is no more entitled to a trial than a plaintiff who asserts no valid claim.

Affirmed.

### On Petition for Rehearing.

Appellants urge that the Company's sales to the New York company, for transportation to New York and resale, are not "sale[s] in interstate commerce" of natural gas for resale within the meaning of the Natural Gas Act, 15 U.S.C.A. § 717 et seq. Their position is not that Congress could not, but that it did not, authorize the Commission to regulate such sales. We think the position untenable.

The Supreme Court has lately held that sales to distributors of natural gas which has been brought from another state are within the jurisdiction of the Federal Power Commission under the Natural Gas Act.[1] The Court said: "An avowed purpose of the Natural Gas Act of June 21, 1938, was to afford, through the exercise of the national power over interstate commerce, an agency for regulating the wholesale distribution to public service companies of natural gas moving interstate, which this Court had declared to be interstate commerce not subject to certain types of state regulation." In support of this statement the Court quoted a House committee report which declared that the Act was not intended to regulate sales to consumers, but was intended to regulate "sales for resale, or so-called wholesale sales, in interstate commerce (for example, sales by producing companies to distributing companies) * * *."

Sales of gas which has just moved interstate and sales of gas which is about to move interstate have like practical effects. Neither the Committee nor Con-

---

[13] In Paragraph 10 of their answer, they (1) deny that it is "necessary or essential to the conduct of the inquiry and investigation pending" that they be required to produce the demanded documents "because" they contain information regarding cost of property, expenses, and revenues; and (2) deny that their refusal to produce the documents has impeded a "lawfully instituted" investigation. These denials appear, in their context, to be alternative ways of asserting that appellants should not be required to furnish information regarding cost, expenses and revenues until "the question whether said company is a natural-gas company within the definition of said Natural Gas Act and whether said company is, therefore, subject to the jurisdiction of the Commission" has been "judicially determined."

[14] § 717m(d), 15 U.S.C.A.

[15] Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047. Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Perkins v. Endicott Johnson Corporation, D.C.N.D.N.Y., 37 F. Supp. 604; Id., D.C.N.D.N.Y., 40 F. Supp. 254.

[1] Illinois Natural Gas Co. v. Central Illinois Public Service Commission, 314 U.S. 498, 62 S.Ct. 384, 387, 86 L.Ed. ——.

gress nor the Court appears to have distinguished between them in regard to the application of the Act; in fact, the contrary appears. To illustrate the sales which the Act was designed to reach, the Committee referred to two Supreme Court cases. One of these involved sale and delivery after the state line had been crossed; but the other involved sale and delivery at the state line.[2] And in the recent Illinois Natural Gas case, quoted above, the Court said: "* * * the particular point at which the title and custody of the gas passes to the purchaser without arresting its movement to the intended destination does not affect the essential interstate nature of the business." Still more recently, in another case upholding the Federal Power Commission's authority under the Act, the Court said: "The sale of natural gas originating in one state and its transportation and delivery to distributors in any other state constitutes interstate commerce * * *."[3] Though that case involved sales in the state of destination, the quoted language covers sales in the state of origin.

In using the phrase "sale in interstate commerce" to include sale for interstate shipment, Congress followed established usage. Sometimes, as in the Tobacco Inspection Act, Congress had expressly defined "commerce" as including "purchase or sale * * * for shipment to another State."[4] In enforcing that Act the Supreme Court said: "So far as the sales are for shipment to other States or to foreign countries, it is idle to contend that they are not sales in interstate or foreign commerce and subject to congressional regulation."[5] Similarly, in enforcing the Agricultural Marketing Agreement Act of 1937, which broadly authorized the Secretary of Agriculture to fix "minimum prices * * * for milk purchased from producers",[6] the Court said: "* * * where commodities are bought for use beyond state lines, the sale is a part of interstate commerce."[7] And without aid from particular legislative language, the Court has repeatedly declared that sales for interstate shipment are a part of interstate commerce.[8] Various cases on which appellants rely ruled, not that certain sales were no part of interstate commerce, but that certain state regulations were only "an incidental burden which is permissible until superseded by Congressional enactment" and not "a prohibited burden on interstate commerce."[9] In many such cases the Court expressly stated that the commerce was interstate.

It is true that in recent years the Court has widened its view of what "affects" interstate commerce and supports federal regulation, and also its view of what state interferences with interstate commerce are permissible in the absence of federal regu-

[2] Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549.

[3] Federal Power Commission v. Natural Gas Pipeline Co. of America, — U.S. —, 62 S.Ct. 736, 741, 86 L.Ed. —.

[4] 49 Stat. 731, § 1, 7 U.S.C.A. § 511(i).

[5] Currin v. Wallace, 306 U.S. 1, 10, 59 S.Ct. 379, 384, 83 L.Ed. 441.

[6] 50 Stat. 246, § 8c(5) (A); 7 U.S.C.A. § 608c(5) (A).

[7] United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 568, 569, 59 S.Ct. 993, 1010, 83 L.Ed. 1446.

[8] Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co., 273 U.S. 83, 86, 90, 47 S.Ct. 294, 71 L.Ed. 549 (sale of electricity to distributor, at state line, held to be a sale "in" interstate commerce, and not subject to regulation by the exporting state although unregulated by Congress).

United States v. E. C. Knight Co., 156 U.S. 1, 13, 15 S.Ct. 249, 39 L.Ed. 325; Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 290, 291, 42 S.Ct. 106, 66 L.Ed. 239; Lemke v. Farmers' Grain Co., 258 U.S. 50, 55, 42 S.Ct. 244, 66 L.Ed. 458; Shafer v. Farmers' Grain Co., 268 U.S. 189, 45 S.Ct. 481, 69 L. Ed. 909.

[9] Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 352, 59 S.Ct. 528, 531, 83 L.Ed. 752. Hope Natural Gas Co. v. Hall, 274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049. A number of these cases are further distinguished by the fact that they relate to retail sales. East Ohio Gas Co. v. Tax Commission of Ohio, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171; Caskey Baking Co. v. Virginia, 313 U.S. 117, 61 S.Ct. 881, 85 L.Ed. 1223; Lone Star Gas Co. v. Texas, 304 U.S. 224, 58 S.Ct. 883, 82 L. Ed. 1304; McGoldrick v. Berwind-White Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; Department of Treasury of Indiana v. Wood Preserving Corporation, 313 U.S. 62, 68, 61 S.Ct. 885, 888, 85 L.Ed. 1188. The Court's statement in the last case that "The transactions were * * * intrastate activities" was not necessary to the decision, viz., that the state had not "exceeded its constitutional authority."

lation. But it does not follow, as appellants appear to assume, that either Congress or the Court has narrowed its view of what is "in" interstate commerce.

Appellants urge that "in interstate commerce" is a narrower term than "in or affecting interstate commerce," and that Congress did not delegate to the Commission its entire power over natural gas. This is true. Sales which merely "affect" interstate commerce are outside the Act. But this throws no light on the question whether the Company's sales to the New York company are "in" interstate commerce.

Appellants urge that the legislative history of the Act shows a general legislative intent not to oust states from any of their authority. A sufficient answer is that the Committee report, quoted above, shows a particular intent to regulate sales for shipment across state lines. Another sufficient answer is that the Act itself, by the use of the phrase "sale in interstate commerce for resale", expresses that particular intent.[10] A third answer is that it is doubtful whether, at the time the Natural Gas Act was passed, the states had authority to regulate the sales here involved.[11] If they had such authority, they lost it when Congress entered the field; although appellants state that the Pennsylvania Public Utility Commission does, in fact, regulate these sales. What "Congress, by the Natural Gas Act, has brought under national control" cannot be determined by ascertaining what would be within state control if Congress had not acted.[12]

The petition for rehearing is denied.

---

[10] Legislative history "cannot be resorted to for the purpose of construing a statute contrary to the natural import of its terms. * * * 'If the language be clear it is conclusive'." United States v. Shreveport Grain & El. Co., 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175.

[11] Attleboro case, note 8, supra, 1927, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549.

Cf. Milk Control Board v. Eisenberg Farm Products, note 9, supra, 1939, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752. The Natural Gas Act was passed in 1938. 15 U.S.C.A. § 717 et seq.

[12] Illinois Natural Gas Co. v. Central Illinois Public Service Commission, note 1, supra.