## FEDERAL POWER COMMISSION v. PANHANDLE EASTERN PIPE LINE CO.

### No. 9847.

United States Court of Appeals
Third Circuit.

Argued Dec. 21, 1948.

Decided Jan. 6, 1949.

Writ of Certiorari Granted March 28, 1949.

See 69 S.Ct. 748.

William S. Tarver, of Washington, D. C., for appellant.

Robert P. Patterson of New York City (E. Ennalls Berl, of Wilmington, Del., Harry S. Littman, of Washington, D. C., and Francis J. Sypher, of New York City, on the brief), for defendant-appellee, Panhandle Eastern Pipe Line Co.

Jeff A. Robertson, of Topeka, Kan., for State Corporation Commission of Kansas.

Arthur G. Connolly, of Wilmington, Del. (Smith & McInerney, of New York City, on the brief), for intervener Smith.

Richards, Layton & Finger, of Wilmington, Del. (Winthrop, Stimson, Putnam & Roberts, of New York City, on the brief), for interveners Clark and others.

Townsend, Elliott & Munson, of Philadelphia, Pa., for Insurance Co. of North America.

Before MARIS, GOODRICH, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

### Dramatis Personae.

1. Federal Power Commission, called "Commission," plaintiff in the court below and appellant here.

2. Panhandle Eastern Pipe Line Company, called "Panhandle," defendant below and appellee here.

3. State Corporation Commission of the State of Kansas.

4. Various Interveners, shareholders of Panhandle.

5. A part with no speaking lines but referred to by all the parties: Hugoton Production Company, called "Hugoton." It is a child of Panhandle, incorporated under the laws of the State of Delaware. Whether the child is legitimate or not is one of the points in this litigation.

### Argument.

Panhandle is an interstate pipe line company which transports and sells gas to local distributors from Texas to Michigan. This gas it gets from wells in Texas, Kansas and Oklahoma. It says it has gas properties under lease which will yield some six trillion cubic feet of natural gas. In September, 1948, Panhandle organized Hugoton, transferred to it gas leases on 97,000 acres of land in Kansas, and retained an option to purchase all or part of the gas produced from that land after January 1, 1965. Hugoton, in turn, has made a contract to sell the gas produced to a distributing company in Kansas which in turn has contracted to sell it for consumption wholly within the state of Kansas. Panhandle also paid Hugoton $675,000 in cash and took back from this company all of its outstanding capital stock. Then it declared a dividend to its own shareholders, one share of Hugoton to every two-share ownership of Panhandle. Share certificates were made out, put in envelopes and made ready to mail from the office of the United States Corporation Company in New Jersey. Mailing was held up by a temporary restraining order by the District Court. That court, after hearing, refused a preliminary injunction. Plaintiff appealed. We continued the stay until the case could be heard and decided in this Court.

The Commission took its first action on October 26, 1948, when it issued an order instituting an investigation of the formation and proposed operation of Hugoton, and the transfer to it of the gas leases mentioned above. On November 10, 1948, the Commission issued a supplementary order to Panhandle and Hugoton, setting the matter down for hearing on January 24, 1949, directing the companies to show cause why the transfers of leases and stock should not be set aside, and directing maintenance of the status quo pending such determination.

### Legal Points.

The controversy here arises out of the statute known as the Natural Gas Act

passed in 1938.[1] That statute by its first section declares that federal regulation in the matters of transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest. There is no doubt that Panhandle is transporting and selling natural gas in interstate commerce and that under section 1 of the Act such transportation and sale by the company are subject to its provisions. The last sentence of the first section of the statute, however, carves out from the subject matter to be regulated a very important exception. The words are: "* * * but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." 15 U.S.C.A. § 717(b).

It would certainly seem from the first half dozen readings of these exclusionary words in the statute that Congress has pretty clearly taken out from its operation and left to state regulation[2] the subject matter of the Panhandle-Hugoton transaction. That subject matter was a parcel of gas leases on land in Kansas. It is pretty hard to see why such leases are not facilities used in the production of natural gas. The word "facilities" has a pretty wide meaning as one looks it up in the dictionary and a glance at the use of the term in court decisions indicates no narrowing

of the breadth of the term.[3] We have no reason to think that Congress meant it to be narrowly applied here.

One is, therefore, immediately confronted with the question: Why, if matters concerning local gas leases are excluded from the scope of the statute, does the Commission charged with its administration have anything to do with the transaction between Panhandle and Hugoton? It is true that under section 14 of the Act, 15 U.S.C.A. § 717m, the Commission has wide investigatory powers, much wider than any subject matter regulated by the statute. It is, for instance, authorized to conduct investigations to obtain information to serve as a basis for recommendation for further legislation to Congress. It was as a matter of investigation that the Commission first started to work upon this Panhandle transfer. But no one in the argument before this Court challenges the scope of the Commission's investigatory power. And such power does not, as to this litigation, require any action from a court of equity.

█ The first answer the Commission makes to the contention that regulation of this transaction is beyond the authority which the Congress granted it, is to say that it is now an established principle of administrative law that the administrative body or agency is, in the first instance, its own judge of the scope of its jurisdiction. Sev-

---

[1] 15 U.S.C.A. § 717 et seq.

[2] "In denying the Federal Power Commission jurisdiction to regulate the production or gathering of natural gas, it was not purpose of Congress to free companies such as petitioner from effective public control. The purpose of that restriction was, rather, to preserve in the States powers of regulation in areas in which the States are constitutionally competent to act. Thus the House Committee Report states: 'The bill takes no authority from State Commissions, and is so drawn as to complement and in no manner usurp State regulatory authority. * * *' [H.R.Rep.No. 709, 75th Cong., 1st Sess., 2.] Clearly, among the powers thus reserved to the States is the power to regulate the physical production and gathering of natural gas in the interests of conservation or of any other consideration of legitimate local concern. * * *" Interstate Natural Gas Co., Inc. v. Federal Power Com-

mission, 1946, 331 U.S. 682, 690, 67 S.Ct. 1482, 1487, 91 L.Ed. 1742.

Cf. Colorado Interstate Gas Co. v. Federal Power Commission, 1945, 324 U. S. 581, 602, 65 S.Ct. 829, 89 L.Ed. 1206, as to the inclusion of production facilities in the rate base.

The states are exercising their regulatory powers in this field. See, e. g., Kansas Gen.Stat., c. 55, §§ 701–713 (Supp. 1947); Mich.Stat.Ann., c. 97 (Supp. 1947); Okla.Stat.Ann., Tit. 52, c. 3, §§ 81–247; Texas Rev.Civ.Stat. Title 102, § 6008 et seq. (Vernon, 1925, with Supp. 1948).

[3] See especially Hartford Electric Light Co. v. Federal Power Commission, 2 Cir., 1942, 131 F.2d 953; Jersey Central Power & Light Co. v. Federal Power Commission, 3 Cir., 1942, 129 F.2d 183; People's Natural Gas Co. v. Federal Power Commission, 1942, 75 U.S.App.D. C. 235, 127 F.2d 153.

eral Supreme Court decisions are cited to us in support of this suggested principle.[4] This Court is not unfamiliar with the decisions cited nor the problems they present, and it quite realizes the risks of making sweeping generalizations in a developing field of the law. We think the one suggested to us is too sweeping. The instances cited were cases where courts came in between the litigant and the agency and blocked, or refused to assist, the carrying out of duties imposed by the lawmaking body upon the agency. The Wages and Hours Administrator cannot, of course, determine whether a given operation in a particular factory is subject to the statute until he finds out what the operation is and then finds out if the provisions of the law are being obeyed by the factory owner.[5] But in this case no court is stepping between the Commission and the performance of its job. The Commission is, on the other hand, seeking court help, which it admits is discretionary, in a situation where its investigatory powers have been unopposed.[6] When a party plaintiff seeks court help, it must show that it is entitled to such help. In determining whether a plaintiff is entitled to the relief asked, the court cannot escape the responsibility of deciding whether plaintiff has been given rights or powers for which court sanction is now sought.

On the question of an administrative agency's determination of its own jurisdiction, moreover, we find that with regard to this Commission and this subject matter, the agency has pretty well defined its own

position. It has been found as a fact that "It has been the practice in the natural gas industry for companies to trade freely in gas leases, and the Commission has never heretofore asserted the right to regulate transfers of such leases." Furthermore, the Commission itself has stated officially: "The Federal Power Commission is of the opinion that it was the intent of Congress that the control of production or gathering of natural gas should remain a function of the States and that the Natural Gas Act should not provide for regulation of those subjects." 18 Code Fed.Regs. § 03.79, p. 2903 (Supp.1947). And the same point has been stated in Supreme Court opinions, although the statements are doubtless obiter and the court's attention was directed to some other point.[7]

Our conclusion as to the argument on this part of the case is that it is our obligation to go ahead and decide the instant appeal on what we believe to be its merits without waiting for further action by the Commission.

▋ The Commissioner's argument for foundation of jurisdiction makes three points. In the first place it says that Panhandle in a previous matter in which the Commission undoubtedly had jurisdiction, represented most of the leases included in the Panhandle-Hugoton transaction to be used and useful in the operation of its then existing pipe line facilities. (2) On the basis of this and, of course, other representations and facts the Commission permitted such leases to be included in Panhandle's rate base. (3) Panhandle in

4 Macauley v. Waterman. Steamship Corp., 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531; Endicott Johnson Corp. v. Perkins, 1943, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424; Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. See Nathanson, Some Comments on the Administrative Procedure Act, 41 Ill. L.Rev. 368, 409 (1947); cf. Berger, Exhaustion of Administrative Remedies, 48 Yale L.J. 981, 992 (1939).

5 Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531.

6 See 2 Vom Baur, Federal Administrative Law § 825 (1942).

7 "We do not mean to suggest that Congress was unmindful of the interests of the producing states in their natural gas supplies when it drafted the Natural Gas Act. As we have said, the Act does not intrude on the domain traditionally reserved for control by state commissions; and the Federal Power Commission was given no authority over 'the production or gathering of natural gas.'" Federal Power Commission v. Hope Natural Gas Co., 1944, 320 U.S. 591, 612, 613, 64 S.Ct. 281, 292, 88 L.Ed. 333. See also Interstate Natural Gas Co., Inc. v. Federal Power Commission, 1946, 331 U.S. 682, 690, 67 S.Ct. 1482, 91 L.Ed. 1742; Colorado Interstate Gas Co. v. Federal Power Commission, 1945, 324 U. S. 581, 602, 65 S.Ct. 829, 89 L.Ed. 1206.

an application for certificates of public convenience and necessity under section 7 of the Act, 15 U.S.C.A. § 717f, made representations to the Commission on the basis of acreage of gas leases it held, some of which are being disposed of in this transaction with Hugoton. These three points, it is said, bring the alienation of gas leases within the scope of Commission activity and form the basis for asking that the Hugoton transaction be held up until the Commission makes its decision. The Commission has been very competently represented and the argument made on its behalf is ingenious and plausible. That there is a connection between the handling of matters in a local gas field and interstate transportation and sale of gas cannot be denied. No doubt Congress could have gone much further than it did in fixing the scope of federal regulation. But it clearly and intentionally drew a line short of where it could have gone.

So, it seems to us that the Commission's argument proves too much. If it prevails, a gas company which had had Commission action on its rate base could never sell an outworn truck nor an obsolete drilling machine without getting Commission approval. It would, likewise, be compelled to take to the Commission every proposed transfer of a ten acre gas lease in exchange for another, no matter how obviously desirable the transfer might be in collecting its holdings in a contiguous area instead of having them scattered. In other words, by this process, it seems to us, the Commission will have taken over the area of regulation of facilities for gas production which by express terms of section 1 of the statute were to be excluded from Commission regulation. The words of the Court of Appeals for the District of Columbia seem applicable, although they were said in connection with a different kind of claim by the Commission: "But the administrative body finds a sufficient penumbra of meaning to justify a claim to more authority than appears upon the face of its grant. It asserts the extended authority and thus forces the issue upon the courts."[8] The court went on to point out that if it is

desirable to extend Commission power, Congress should be asked to do it. The same advice applies here mutatis mutandis.

■ Section 20 of the statute provides for action being brought in federal courts "whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute violation of the provisions of this Act or of any rule, or regulation, or order thereunder". 15 U.S.C.A. § 717s. Now the Commission has not alleged that Panhandle or Hugoton has violated the statute. The most it says is that the Commission might, on investigation, find that what had been done was in violation of the law. So the first part of the language quoted is not applicable to give it a standing to ask for court help at this point.

■ The appellant's argument points further to the Commission's order of November 10 in which it directed the company to show cause why the transfer of leases should not be set aside and directed maintenance of the status quo pending determination. This is an order no doubt. But if it is not a valid order because beyond Commission jurisdiction, the Commission cannot have court help to enforce it. We have endeavored to set out above why we think an order interfering with the transfer of these leases would go beyond Commission authority.

■ Argument for some of the interveners tells the Court that the Panhandle-Hugoton transaction is a thing done and there is nothing a court can do to stop it. This argument makes no appeal to us. We do not think that the shareholders of Panhandle have fully completed rights to their stock dividends of Hugoton until they get the certificates. Those certificates are now in the hands of the custodian and are held there by the action of this Court. If we were convinced that the Commission had the proper grounds for asking for relief, we think an injunction would accomplish everything necessary to prevent consummation of the transaction. It is not because we think the equitable powers of

---

[8] Border Pipe Line Company v. Federal Power Commission, 1948, 171 U.S.App.D.C. —, — F.2d 149.

the District Court are insufficient, but because we do not think the facts call for their exercise, that we are approving that court's refusal of relief in this case.

The judgment of the District Court will be affirmed. Because of the nature of the situation, however, we shall continue the stay order for ten days from the date of the entry of our judgment. That will give the plaintiff opportunity to seek certiorari if it is so advised. Unless we do take this action it is quite obvious that since our stay order disappears when the judgment is entered the case will become moot.